# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Fredericksen v. Armstrong*, 2011 IL App (2d) 100459

---

| | |
|---|---|
| Appellate Court Caption | ROBERT FREDERICKSEN, DAVID WILSON, KAY PHORASAVONG, JAMES MAGURA, and PATTI SMITH, Plaintiffs-Appellants, v. MARK ARMSTRONG, in His Capacity as Kane County Supervisor of Assessments, THE KANE COUNTY BOARD OF REVIEW, and THE KANE COUNTY COLLECTOR, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2–10–0459 |
| Filed | June 29, 2011 |
| Rehearing denied | August 5, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed plaintiffs' complaint seeking refunds of property taxes paid from 2005 through 2008 based on the failure to provide a credit for the "Senior Citizens Homestead Exemption" in four cases and one case in which there was an alleged mistake in the property's square footage, notwithstanding plaintiffs' reliance on section 20–175 of the Property Tax Code, since certificates of error were issued for the current tax cycle and were not applied retroactively to 2005, no plaintiff filed an application for a homestead exemption prior to 2009, the taxpayer with a claim based on a mistake in square footage never filed a tax objection complaint "for any of the years in question," the claims did not fall within the "five-year window" of section 20–175, an unclaimed homestead exemption is not the type of "overpayment" contemplated by section 20–175, and neither case law nor section 20–175 provided for retroactive application of a certificate of error for a year other than the year for which it was issued. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09–L–613; the Hon. Judith M. Brawka, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Timothy P. Dwyer, of Law Office of Timothy P. Dwyer, of St. Charles, for appellants. |
| | John A. Barsanti, State's Attorney, of St. Charles (Joseph F. Lulves, Assistant State's Attorney, of counsel), for appellees. |
| Panel | JUSTICE BOWMAN delivered the judgment of the court, with opinion. Justices McLaren and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiffs, Robert Fredericksen, David Wilson, Kay Phorasavong, James Magura, and Patti Smith, are residents of Kane County seeking refunds of property taxes paid from 2005 through 2008. Relying on section 20–175 of the Property Tax Code (35 ILCS 200/20–175 (West 2008)), they filed a complaint for declaratory judgment to this effect. Defendants, Supervisor of Assessments Mark Armstrong, the Kane County Board of Review, and the Kane County collector (collectively Kane County), moved to dismiss plaintiffs' complaint pursuant to sections 2–619(a)(5) and 2–619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2–619(a)(5), (a)(9) (West 2008)). The trial court granted Kane County's motion to dismiss, and plaintiffs appeal. We affirm.

¶ 2                          I. BACKGROUND

¶ 3                           A. Pleadings

¶ 4 On October 2, 2009, plaintiffs filed a complaint for declaratory judgment. Four of the plaintiffs alleged tax errors relating to homestead exemptions, and one plaintiff alleged a tax error based on a mistake in her property's square footage. The complaint alleged as follows. In 2009, plaintiff Fredericksen discovered that he was not being credited with the "Senior Citizens Homestead Exemption," so he notified Kane County of this error on March 27, 2009. Attached to the complaint was plaintiff Fredericksen's application for a senior citizens homestead exemption, dated March 27, 2009. On June 24, 2009, Kane County issued a

"Certificate of Error" but stated that such certificate could be issued only for "the present tax cycle." In other words, Kane County executed the certificate of error for the tax year 2008, payable in 2009, but refused to apply the exemption retroactively. However, plaintiff Fredericksen alleged that "he was entitled to the Senior Citizens Homestead Exemption since 2005."

¶ 5 The complaint further alleged that plaintiffs Wilson, Phorasavong, and Magura had been issued "Certificates of Error" for 2009 with respect to general homestead exemptions. The three plaintiffs' applications for general homestead exemptions, dated in March and May of 2009, were attached to the complaint. As with plaintiff Fredericksen, plaintiffs Wilson, Phorasavong, and Magura had been informed by Kane County that the general homestead exemptions would be applied not retroactively, but toward only the 2009 tax cycle. However, these plaintiffs alleged that they had lived in their respective homes in excess of five years and were entitled to receive refunds for homestead exemptions during those previous years.

¶ 6 Finally, the complaint alleged that plaintiff Smith had been issued a "Certificate of Error" due to a mistake in the square footage of her home. Referring to the error as an "erroneous assessment," plaintiff Smith alleged that the mistake caused her to overpay her taxes for at least five years and that she was entitled to a tax refund for those years.

¶ 7 All of the plaintiffs relied on section 20–175 of the Property Tax Code (35 ILCS 200/20–175 (West 2008)), which creates a five-year window for certain tax refunds, to support their argument that they were entitled to receive refunds back to 2005. Plaintiffs did acknowledge in their complaint that, as a matter of custom and practice, Kane County had refused to honor "retroactive adjustments to erroneous assessments," such as general homestead exemptions, senior citizens homestead exemptions, and certificates of error based on erroneous assessments. However, plaintiffs maintained that this policy was "legally erroneous" and contravened the above provision of the Property Tax Code.

¶ 8 On November 28, 2009, Kane County moved to dismiss plaintiffs' complaint pursuant to sections 2–619(a)(5) and 2–619(a)(9) of the Code, stating as follows. All plaintiffs had received certificates of error for the 2008 tax year and thus rebates on their 2008 tax bills. In addition, all plaintiffs were requesting the court to order that the certificates of error be made retroactive for at least five years pursuant to section 20–175 of the Property Tax Code. However, it was undisputed that none of the plaintiffs had filed any applications or requests for relief from taxing authorities before 2009. With respect to the plaintiffs seeking retroactive homestead exemptions, none of them had filed an application for a homestead exemption before 2009. Kane County argued that the failure to file an application for a homestead exemption precluded a refund, because such an application was a prerequisite to receiving the benefit of a tax exemption. Case law was clear that each tax year was a discrete and separate cause, Kane County argued, without *res judicata* effect on subsequent years. In addition, Kane County argued that plaintiff Smith's claim based on a mistake in square footage failed because she had never filed a tax objection complaint "for any of the years in question." According to Kane County, plaintiff Smith sought relief under the wrong section of the Property Tax Code, rendering her claim untimely.

¶ 9 Plaintiffs responded to Kane County's motion to dismiss. To counter Kane County's

argument that the Property Tax Code allowed plaintiffs a refund for only the current tax cycle, plaintiffs asserted that section 20–175 allows taxpayers the right to claim refunds of their overpaid taxes in conformance with the limitations period set forth in that section, which is five years. Plaintiffs also argued that the Property Tax Code does not contain an application requirement for general homestead exemptions. Moreover, although the Property Tax Code allows "the County" to promulgate rules regarding exemptions, plaintiffs argued that no such rules had been developed in Kane County.

¶ 10      Kane County replied to plaintiffs' response and maintained that section 15–10 of the Property Tax Code does require the filing of an application to receive a general homestead exemption. See 35 ILCS 200/15–10 (West 2008). Also, Kane County refuted plaintiffs' argument that it had no rules in place regarding the filing of applications of homestead exemptions. According to Kane County, the attachments to plaintiffs' own complaint, which were exemption applications, evidenced that applications for homestead exemptions in Kane County needed to be signed and filed.

¶ 11                          B. Trial Court's Decision

¶ 12      Following a hearing, the trial court issued a written decision on March 9, 2010. In its nine-page ruling, the court granted Kane County's motion to dismiss, reasoning as follows. Plaintiffs Fredericksen, Wilson, Phorasavong, and Magura, referred to by the court as the "Homestead Plaintiffs," all sought refunds of property taxes paid from 2005 through 2008, "for previously unclaimed homestead exemptions." These Homestead Plaintiffs received certificates of error in 2009 for the tax year 2008 "for either an unclaimed senior [citizens] or general homestead exemption." On the other hand, plaintiff Smith sought a refund of property taxes overpaid from 2005 through 2008 based on improper square footage calculations. As a result, plaintiff Smith was issued a specific single certificate of error in 2009 for the tax year 2008.

¶ 13      The court noted that plaintiffs relied on section 20–175 to support their position that a property taxpayer who was "erroneously assessed" as to square footage (plaintiff Smith) or who failed to file an application for an exemption (Homestead Plaintiffs) has the right to claim a refund for a period of five years from when the claim arose, regardless of whether a certificate of error was issued for the previous claimed years or whether the claim complies with other limitation provisions within the Property Tax Code. The court further noted that Kane County's response was that the Homestead Plaintiffs failed to state a claim upon which relief could be granted, because they failed to timely file exemption applications for the "prior years demanded" and because they were not entitled to retroactive consideration of the certificates of error they did possess. In addition, Kane County argued that plaintiff Smith was not entitled to a tax refund based on improper square footage, because she had failed to exhaust other available administrative remedies under the Property Tax Code.

¶ 14      The court rejected plaintiffs' claims and relied on numerous provisions of the Property Tax Code. First, the court agreed with Kane County that the plain language of section 15–10 requires a taxpayer to apply for a homestead exemption, by stating that " '[a]n application for homestead exemptions shall be filed as provided.' " See 35 ILCS 200/15–10 (West

2008). Because none of the Homestead Plaintiffs had filed an application for a homestead exemption until 2009, and no certificates of error were issued for the years in question, none of the Homestead Plaintiffs was entitled to claim a refund for overassessment of taxes "paid in 2008, 2007, 2006, and 2005 based on any type of homestead exemption claims."

¶ 15    Second, the court rejected plaintiffs' argument that their claims for refunds fell under section 20–175 (35 ILCS 200/20–175 (West 2008)) and its five-year window. Specifically, the court determined that the Homestead Plaintiffs' claims were not based on (1) a claim of tax paid on property twice assessed for the same year or (2) a claim of tax paid on property assessed before it becomes taxable. In reaching this conclusion, the court distinguished the two primary cases relied upon by plaintiffs, *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008), and *Ball v. County of Cook*, 385 Ill. App. 3d 103 (2008). According to the court, neither section 20–175 nor the case law cited by plaintiffs provided for "retroactive application of a certificate of error for a year other than for which it was issued."

¶ 16    In regard to plaintiff Smith, the trial court agreed with Kane County that her claim of overpaid taxes based on erroneous square footage was controlled by other sections of the Property Tax Code (see 35 ILCS 200/23–10, 23–15 (West 2008)). As with the Homestead Plaintiffs, whose claims did not fall under section 20–175 and its "five-year window," plaintiff Smith's claim did not fall under section 20–175 either.

¶ 17    For these reasons, the trial court granted Kane County's motion to dismiss, and the order stated that plaintiffs' complaint was "dismissed without leave to replead." Plaintiffs moved to reconsider the court's decision, and this motion was denied on May 5, 2010. Plaintiffs filed a timely notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19    Plaintiffs appeal the dismissal of their complaint pursuant to section 2–619 of the Code. "The purpose of a section 2–619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A motion to dismiss under section 2–619 admits the legal sufficiency of the complaint but asserts affirmative matter, outside the complaint, that defeats the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). When a court rules on a section 2–619 motion to dismiss, it must interpret all pleadings and supporting documents in the light most favorable to the nonmovant. *Van Meter*, 207 Ill. 2d at 367-68. Our standard of review regarding the dismissal is *de novo*. *Kean*, 235 Ill. 2d at 361.

¶ 20    The issues in this case involve statutory construction, which we also review *de novo*. *Kean*, 235 Ill. 2d at 361. When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *Id*. In determining legislative intent, we first examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Alvarez*, 229 Ill. 2d at 228. The statutory language must be given its plain, ordinary, and popularly understood meaning. *Id*. If the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction. *Id*. We assume when construing a statute that the legislature did not intend absurdity, inconvenience, or injustice. *Id*.

¶ 21                                    A. Homestead Plaintiffs

¶ 22        We first address the Homestead Plaintiffs' argument, which is that section 20–175 allows
them to receive tax refunds for unclaimed homestead exemptions back to 2005. Section
20–175 provides, in pertinent part:

> "Refund for erroneous assessments or overpayments. If any property is twice assessed
> for the same year, or assessed before it becomes taxable, and the erroneously assessed
> taxes have been paid either at sale or otherwise, or have been overpaid[1] by the same
> claimant or by different claimants, the County Collector, upon being satisfied of the facts
> in the case, shall refund the taxes to the proper claimant. *** A claim for refund shall not
> be allowed unless a petition is filed within 5 years from the date the right to a refund
> arose. If a certificate of error results in the allowance of a homestead exemption not
> previously allowed, the county collector shall pay the taxpayer interest on the amount of
> taxes paid that are attributable to the amount of the additional allowance, at the rate of
> 6 % per year." 35 ILCS 200/20–175 (West 2008).

This section provides an exception to the voluntary payment doctrine. *Alvarez*, 229 Ill. 2d
at 221. Under the voluntary payment doctrine, a taxpayer may not recover taxes that are
voluntarily paid, even if the taxing body imposed or assessed the taxes illegally. *Id*. "Such
taxes may be recovered only if the recovery is authorized by statute." *Id.*

¶ 23        In arguing that section 20–175 allows them to receive refunds for unclaimed homestead
exemptions back to 2005, plaintiffs rely on our supreme court's decision in *Alvarez* and a
First District case, *Ball*. We discuss each case in turn.

¶ 24        In *Alvarez*, the plaintiffs were property owners who had made duplicate payments of their
real estate taxes. *Alvarez*, 229 Ill. 2d at 218. The plaintiffs paid their tax bills after they
received them, apparently unaware that their respective lenders were also paying these same
bills. *Id*. at 218-19. Because the plaintiffs in *Alvarez* sought refunds of their duplicate
payments *more* than five years after they were paid, they argued that their payments did *not*
fall under section 20–175 and thus their claims were not time-barred. *Id*. at 221-22. In order
to avoid the five-year statute of limitations, the plaintiffs argued that the plain language of
that section demonstrated that it applied *only* in cases of erroneous assessments. *Id.* at 229.
In other words, the plaintiffs maintained that the clause referring to taxes that have been
overpaid was not an independent clause; rather, it modified the preceding clause that referred
to taxes paid on property that had been twice assessed or on property before it became
taxable. *Id.*

¶ 25        The supreme court agreed that the plain language of the statute supported the plaintiffs'
interpretation that the clause " 'or have been overpaid by the same claimant or by different
claimants' " modified the preceding clause regarding the erroneous assessment of taxes. *Id*.
at 231. Nevertheless, the supreme court noted that the legislature had amended the statute in

---

[1]The prior version of this statute did not use the word "overpaid," but stated "twice paid by different
claimants." Ill. Rev. Stat. 1973, ch. 120, ¶ 767.

1975 to replace the language " 'twice paid' " with " 'overpaid,' " which appeared to be an attempt to broaden the scope of that section. *Id*. at 231. Because the plain language of section 20–175 did not give effect to this apparent intent, however, the supreme court found the language "unclear and ambiguous," which led the court to consider the legislative history to resolve the ambiguity. *Id*. at 232.

¶ 26 Legislative discussion over the amendment showed that it dealt " 'with the problem that confronts real estate property taxpayers who *** have paid an installment twice,' " because, at the time, there was no statutory authority by which county collectors could make refunds of overpayments by taxpayers. *Id*. at 232 (quoting 79th Ill. Gen. Assem., House Proceedings, Mar. 20, 1975, at 48 (statements of Representative Schlickman)). According to the supreme court, the legislative history confirmed that the General Assembly intended to broaden the scope of the statute to include overpayments of property taxes *without* regard to whether those overpayments were pursuant to erroneous assessments. *Id*. at 233. Otherwise, property owners whose overpayment of their taxes did *not* involve erroneous assessments, such as the plaintiffs in *Alvarez* who, by their own mistake, paid their taxes twice, would be deprived of the ability to obtain refunds. *Id*. The court concluded that "we must construe section 20–175 as permitting refunds of overpaid taxes, regardless of whether any erroneous assessment of property is involved." *Id*. at 233-34. Because the plaintiffs' "overpayments" of their taxes were subject to section 20–175, the supreme court determined that their claims for refunds were time-barred because they were made more than five years after the plaintiffs had made the overpayments. *Id.* at 234.

¶ 27 The First District decided *Ball* a few months after *Alvarez*. In *Ball*, the court considered whether section 20–175 encompassed the plaintiffs' claims for tax refunds based on homestead exemptions. In that case, one of the plaintiffs filed amended complaints in 2001 and 2003 alleging that he had paid his 1987 real estate tax bill without claiming the homestead exemption to which he was entitled. *Ball*, 385 Ill. App. 3d at 103. In 1990, the plaintiff claimed his homestead exemption and sought a refund of the excess taxes. *Id*. at 103-04. The Cook County assessor issued a "certificate of error," which was certified by the trial court, but the plaintiff was never notified of the certificate of error, nor did he receive a refund. *Id*. at 104. Unlike the plaintiffs in the case at bar, the plaintiff in *Ball* argued that his claim did *not* fall under section 20–175, because his complaint was outside of the five-year limitations period contained in that section. *Id*. at 105-06. In particular, the plaintiff in *Ball* argued that section 20–175 did not apply because the property at issue was neither twice assessed nor assessed before it became taxable. *Id*. at 105.

¶ 28 Relying on *Alvarez*, the First District rejected the plaintiff's argument, stating that "our supreme court decided that 'to give effect to the legislature's intent, we must construe section 20–175 as permitting refunds of overpaid taxes, regardless of whether any erroneous assessment of property is involved.' " *Id*. (quoting *Alvarez*, 229 Ill. 2d at 233-34). Contrary to his assertion, the court held that the refund that the plaintiff sought was available "only through section 20–175 of the Property Tax Code." *Id*. at 106. However, because the plaintiff had filed his complaint more than five years after his taxes were paid, the five-year statute of limitations barred his claim. *Id*.

¶ 29 The Homestead Plaintiffs rely on *Alvarez* and *Ball* for the proposition that section

20–175 permits recovery of overpaid taxes not involving erroneous assessments, such as overpayments due to unclaimed homestead exemptions. Further, because the Homestead Plaintiffs did file their complaint within the five-year limitation, unlike Ball, who filed his complaint more than five years later, they argue that they are entitled to tax refunds dating back to 2005. We disagree.

¶ 30     The problem with the Homestead Plaintiffs' argument is that they read section 20–175, *Alvarez*, and *Ball* too broadly. The plain language of section 20–175 applies to specific types of "erroneous assessments" or "overpayments," namely, those involving property that has been twice assessed for the same year or assessed before it becomes taxable. It does not, as the Homestead Plaintiffs contend, apply to *any* type of erroneous assessment or overpayment. Although *Alvarez* interpreted "overpaid" taxes to not require an erroneous assessment, this was in the context of taxes paid twice, which section 20–175 was intended to address. As set forth above, the facts in *Alvarez* involved taxpayers who twice paid their taxes, not due to erroneous assessments by the county, but due to their own inadvertent mistakes. Because it was unclear whether the plain language of the statute requires an "erroneous assessment" in order for such taxpayers to receive refunds, the *Alvarez* court looked at the legislative history of that section and determined that it was intended to refund a taxpayer who had paid an installment twice, regardless of whether the overpayment occurred as a result of an erroneous assessment or due to the taxpayer's own mistake. Given that this was the limited question resolved in *Alvarez*, the holding in that case does not control the outcome here. Simply put, *Alvarez* does not hold that taxpayers are entitled to refunds of *any* overpaid taxes, regardless of whether any erroneous assessment of property is involved. Therefore, an unclaimed homestead exemption is not the type of "overpayment" contemplated by section 20–175.

¶ 31     Likewise, the holding in *Ball* does not help the Homestead Plaintiffs. There, the First District applied section 20–175 to a plaintiff who was entitled to a homestead exemption but failed to apply for the exemption until later, which resulted in the issuance of a certificate of error. Of critical importance in *Ball* is the certificate of error. Section 20–175 states that "[i]f a certificate of error results in the allowance of a homestead exemption not previously allowed, the county collector shall pay the taxpayer interest on the amount of taxes paid that are attributable to the amount of the additional allowance, at the rate of 6% per year." 35 ILCS 200/20–175 (West 2008). Because the plaintiff in *Ball* was never notified of the certificate of error and never received a refund, he filed a complaint seeking that refund under section 20–175. However, section 20–175 states that "[a] claim for refund shall not be allowed unless a petition is filed within 5 years from the date the right to a refund arose." 35 ILCS 200/20–175 (West 2008). Because the plaintiff's complaint was filed *more* than five years after his right to a refund arose, his complaint was time-barred.

¶ 32     In this case, the Homestead Plaintiffs discovered in 2009 that they were not being credited with general homestead exemptions or a senior citizens homestead exemption, and they filed applications for these exemptions that year. Kane County then issued certificates of error for all of these plaintiffs for the tax year 2008, payable in 2009. As a result, the Homestead Plaintiffs have certificates of error that apply only to the tax year 2008, and they possess no certificates of error for previous tax years. The problem with the Homestead Plaintiffs' reliance on *Ball* is that the plaintiff in *Ball* had one certificate of error for the tax

year 1987, and the refund he sought was only for that year. Nothing in *Ball* suggests that the plaintiff was entitled to receive a refund for a year in which he did *not* possess a certificate of error. Contrary to the Homestead Plaintiffs' assertion, *Ball* does not stand for the proposition that certificates of error may be applied retroactively for tax refunds. Without certificates of error, the Homestead Plaintiffs are not entitled to refunds for the tax years before 2008.

¶ 33     In an intertwined argument, the Homestead Plaintiffs argue that a general homestead exemption is an entitlement that does not require an application, either under the Property Tax Code or in Kane County. However, we need not resolve this issue, because it is undisputed that the Homestead Plaintiffs possess certificates of error for one year alone. As previously mentioned, we do not read the "overpaid" language in section 20–175 to apply in any scenario in which a taxpayer claims that he overpaid or to open a five-year window for tax refunds based on unclaimed homestead exemptions. What section 20–175 provides is a five-year window to collect on a certificate of error resulting from the allowance of a homestead exemption not previously allowed. There is no language in section 20–175 supporting plaintiffs' assertion that their certificates of error relating to one tax year may be applied retroactively.

¶ 34     The Homestead Plaintiffs have cited to no statute that entitles them to tax refunds outside of 2008. See *Sorce v. Armstrong*, 399 Ill. App. 3d 1097, 1101 (2010) (a taxpayer may not recover taxes that he has voluntarily paid unless a statute allows such a recovery). Accordingly, the trial court properly granted Kane County's motion to dismiss as to the Homestead Plaintiffs.

¶ 35                         B. Plaintiff Smith

¶ 36     Like the Homestead Plaintiffs, plaintiff Smith relies on section 20–175 for a tax refund, although for a different reason. According to plaintiff Smith, she is entitled to recovery under section 20–175 because her claim actually involves an "erroneous assessment," based on a mistake in the calculation of her square footage. Again, we determine that section 20–175 does not encompass plaintiff Smith's claim for a tax refund. We have already stated that the plain language of section 20–175 applies to specific types of "erroneous assessments" or "overpayments," namely those involving property that has been twice assessed for the same year or assessed before it becomes taxable. Although the reach of this section was expanded in *Alvarez* to include twice-paid taxes, it does not apply to every type of erroneous assessment or error in the calculation of taxes, such as the one involved here based on a mistake in square footage. Moreover, as plaintiff Smith concedes, this court recently rejected an identical argument in *Sorce*.

¶ 37     In *Sorce*, the plaintiffs alleged in their amended complaint that in June 2008 they notified their township assessor of an error in their tax assessment. *Sorce*, 399 Ill. App. 3d at 1098. The assessor issued a certificate of error for the tax year 2007, for which the taxes were payable in 2008. *Id.* at 1098-99. However, the plaintiffs alleged that erroneous measurements of improvements on their property and/or other erroneous calculations had led to an inflated assessment of their property and to tax payments in excess of the value of the improvements

for at least 10 years. *Id*. at 1099. Like plaintiff Smith in the case at bar, another plaintiff in the *Sorce* case, plaintiff McTavish, alleged that he discovered in 2007 that the property record card for his property included square footage that did not exist. *Id*. Plaintiff McTavish obtained a 30% reduction in his assessment for the 2007 tax year, which was payable in 2008. *Id*. All of the plaintiffs in *Sorce* contended that they had overpaid their taxes for at least five years due to erroneous assessments and that section 20–175 allowed any taxpayer who was erroneously assessed to claim a refund for a period of five years from the date the right to a refund arose. *Id*. As a result, they requested Kane County to issue certificates of error for tax years 2004, 2005, and 2006. Kane County moved to dismiss the plaintiffs' complaint, and the trial court granted its motion to dismiss.

¶ 38    On appeal, the plaintiffs argued that in *Alvarez* our supreme court extended the reach of section 20–175 and its five-year limitation to the recovery of *any* overpayment of property taxes. *Id*. at 1100. This court rejected the plaintiffs' argument, stating as follows:

"Plaintiffs misread the import of *Alvarez*. The holding in *Alvarez* did not extend the application of section 20–175 to all tax payments that were based on some error in the calculation of the taxes due. The plaintiffs in *Alvarez* sought refunds of payments over and above the taxes that had been levied against their properties; tax bills were paid by both the property owners and their lenders. The plaintiffs mistakenly paid more than their tax bills required, and the taxing bodies received more money than they were owed. *Alvarez* merely determined that section 20–175 applied to an overpayment of taxes regardless of any error in the assessment; it did not extend the coverage of section 20–175, and its five-year limitations period, to the payment of taxes where the amount of the taxes was incorrectly calculated. *** We determine that *Alvarez* does not entitle plaintiffs to the refunds that they seek." *Id*. at 1100-01.

¶ 39    In distinguishing *Alvarez*, this court determined that section 20–175 did not apply to the plaintiffs' claims in *Sorce* and that the plaintiffs could point to no other statutory provision allowing them to recover the taxes they paid before 2008. *Id*. at 1101. The trial court was thus correct in granting Kane County's motion to dismiss on the basis that the action was not commenced within the time limited by law. *Id*.

¶ 40    *Sorce* compels the same result here. Like the plaintiff in *Sorce*, plaintiff Smith seeks a tax refund based on improper square footage under section 20–175. However, as we determined in *Sorce*, section 20–175 does not apply to plaintiff Smith's claim, and she cites to no other section of the Property Tax Code that would permit recovery. See *id*. (a taxpayer may not recover taxes that he has voluntarily paid unless a statute allows such a recovery, even if the taxing body lacked authority to impose the tax in question). Plaintiff Smith's certificate of error relates to the tax year 2008, and section 20–175 does not permit her to recover tax refunds back to 2005.

¶ 41    As a final argument, plaintiff Smith requests this court to revisit *Sorce* on the basis that it does not honor the holding in *Alvarez*. Reasoning that section 20–175 was intended to refund a taxpayer who had paid an installment *twice*, our supreme court held in *Alvarez* that section 20–175 applied to property owners who had twice paid (*i.e.*, overpaid) their tax bills due to their own mistakes as opposed to erroneous assessments. As we stated in *Sorce*,

*Alvarez* did not extend the application of section 20–175 to all tax payments that were based on some error in the calculation of the taxes due. Other than the limited expansion of section 20–175 to include twice-paid taxes, nothing in *Alvarez* disturbed the court's earlier interpretation of this section, which allowed a refund only if property was twice assessed or assessed before it became taxable. See *Burley v. Lindheimer*, 367 Ill. 425, 427-28 (1937) (the statute permitting a refund for property assessed before it became taxable did not apply where the property owner conveyed part of her property to a church, making it nontaxable, but still continued to pay taxes assessed on that property); *Anglo-American Provision Co. v. Lindheimer*, 367 Ill. 193, 196 (1937) (the statute did not apply where error made was an overvaluation rather than a double assessment, and the property owners could have obtained other relief from the taxing authorities); *American Can Co. v. Gill*, 364 Ill. 254, 255 (1936) (where the assessment of improvements was mistaken based on the misplacement of a decimal point, the improvements were not twice assessed or assessed before they became taxable as required under the statute, and the relief sought could have been secured under other provisions of the Revenue Act); *Cooper Kanaley & Co. v. Gill*, 363 Ill. 418, 421-22 (1936) (where a one-story building was mistakenly assessed as a nearby three-story hotel building, the case was simply one of overassessment or excessive assessment and not an example of property twice assessed within the meaning of the statute).

¶ 42       Accordingly, the trial court correctly granted Kane County's motion to dismiss as to plaintiff Smith.

¶ 43                                   III. CONCLUSION

¶ 44       Because section 20–175 of the Property Tax Code does not apply to plaintiffs' claims for tax refunds based on improper square footage or unclaimed homestead exemptions *not* resulting in certificates of error, the judgment of the Kane County circuit court granting Kane County's motion to dismiss is affirmed.

¶ 45       Affirmed.